IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br>  Plaintiff, <br><br> v. <br><br> FLOYD'S EQUIPMENT, INC. <br><br>  Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 17-cv-2493 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

COMPLAINT

NATURE OF THE ACTION

This is a four-count action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII) and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices by Floyd's Equipment, Inc. ("Floyd's" or "Defendant") and to provide appropriate relief to Rodney Woodall ("Woodall").  As alleged with more particularity below, the Commission alleges Defendant intentionally violated Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by harassing and terminating Woodall because of his race, as well as Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Woodall by (1) transferring him to a less desirable work site and job assignment without his consent, and (2) terminating his employment because he opposed unlawful harassment.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because Floyd's corporate headquarters is located in Sikeston, Missouri and the employment records relevant to the alleged unlawful employment practices are maintained at that location.  Also, Floyd's transferred Woodall to a job site in southeastern Missouri where he was working at the time of his discharge.

## PARTIES

4. Plaintiff U.S. Equal Employment Opportunity Commission ("the Commission") is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action pursuant to 42 U.S.C. 2000e-5(f)(1) and (3).

5. Defendant Floyd's Equipment, Inc. ("Floyd's") was incorporated in the State of Missouri in 2002 and has its principal place of business in Sikeston, Missouri.

6. At all relevant times, Floyd's has continuously been a business engaged in an industry affecting commerce under Sections 701(g) and (h) of Title VII, 42 U.S.C.§ 2000e(g) and (h).

7. During the relevant period, Floyd's has employed more than fifteen people and is therefore an "employer" under Title VII, 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEDURES

8. On September 17, 2016, more than 30 days prior to the institution of this

lawsuit, Rodney Woodall filed a charge with the Commission alleging that Floyd's violated various provisions of Title VII.

9. On September 20, 2016, the Commission mailed Floyd's a timely notice of Woodall's charge as required by 42 U.S.C. § 2000e-5(b).

10. On June 22, 2017, following the Commission's investigation of Woodall's charge, the Commission issued a Letter of Determination pursuant to 42 U.S.C. § 2000e-5(b) finding reasonable cause to believe that Floyd's violated Title VII and inviting the company to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

11. The Commission engaged in communications with Floyd's owner to provide the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. The Commission was unable to secure an acceptable conciliation agreement with Floyd's.

13. On July 25, 2017, the EEOC issued a Notice of Failure of Conciliation to Floyd's advising that the Commission was unable to secure an acceptable conciliation agreement.

14. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

16. Rodney Woodall is bi-racial (Caucasian and African-American).

17. Woodall was an "employee" of Floyd's within the meaning of Section 701(f) of Title VII, 42 U.S.C. § 2000e(f).

18. Woodall was employed by Floyd's for several months in 2015 and was rehired in early July 2016.

19. When Floyd's rehired Woodall in July 2016, he worked as a qualified backhoe operator at a job site in western Kentucky.

20. Woodall's foreman at this job site, Leonard ("Butch") Nelson (Caucasian), reported to Superintendent James Simandl (Caucasian).

21. On approximately July 13, 2016, Nelson shouted at a Caucasian employee standing near Woodall, "hurry up nigger!"

22. On July 18, 2016, Nelson called an employee "nigger" over the radio in the presence of Woodall and other employees.

23. Upon information and belief, Nelson had used the term "nigger" in the workplace on previous occasions.

24. On or about July 19, 2015, after enduring Nelson's repeated racial slurs and harassment, Woodall complained to Superintendent Simandl.

25. Simandl then spoke to Nelson about Woodall's complaint but did not take any disciplinary actions against Nelson nor did he make a record of his conversation.

26. The following day, on or about July 20, 2016, Nelson confronted Woodall when he arrived at the job site and stated he would call him whatever he wanted and, if Woodall didn't like it, he should find another job.

27. Nelson also said to Woodall that he would call him "Oreo," an offensive reference to Woodall's bi-racial ethnicity.

4

28. Woodall was extremely upset, offended and humiliated by Nelson's comments.

29. Nelson also indicated to Woodall that he wanted to engage in a physical altercation with him, but Woodall refused to be provoked.

30. Extremely upset by Nelson's actions and words, Woodall told Simandl about Nelson's racist comments and conduct that same day, July 20, 2016.

31. On or about July 21, 2016, Floyd's transferred Woodall to a job site in Missouri.

32. When he was transferred to Missouri, Woodall was assigned to perform less desirable, more physically strenuous labor digging with a shovel rather than operating a backhoe as he had in Kentucky.

33. Woodall did not consent to this transfer or the negative change in his job duties.

34. The transfer also negatively impacted Woodall's financial situation because he no longer received a daily mileage per diem.

35. On July 27, 2016, Woodall called his new foreman, Kelly Manning, to inform him that he was going to be late to work that morning.

36. Manning told Woodall that he need not report to work because he was being terminated.

37. During Woodall's 2016 employment, he had no attendance infractions prior to July 27 when he was terminated.

38. Prior to his termination, Woodall received no disciplinary action from Floyd's.

5

39. Throughout his employment with Floyd's, Woodall performed his job duties well.

40. Upon information and belief, Floyd's attendance policy did not provide that an employee would be terminated for a single tardy or absence.

41. To the contrary, upon information and belief, Floyd's had a "three strike" attendance policy under which an employee would be terminated only after three infractions.

42. Similarly-situated Caucasian employees and employees who did not oppose racial harassment by Floyd's, including Josh Greer, were absent and/or tardy on one or more occasions but were not terminated.

43. Floyd's stated reason for Woodall's termination – specifically, his tardiness on July 27, 2016 – is a pretext for unlawful race discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a) and 3(a).

## COUNT I

(Title VII – Unlawful Harassment/Race)

44. Plaintiff repeats, re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

45. Nelson's repeated use of racial slurs in Woodall's presence was intentional and intended to negatively impact Woodall.

46. These racial slurs and Nelson's conduct toward Woodall in the confrontation were unwelcome, highly offensive, egregious, humiliating and intimidating.

47. Nelson's racial slurs and intimidating behavior and comments to Woodall were

6

sufficiently severe and pervasive to create a racially hostile work environment for Woodall.

48. Although Woodall notified Floyd's of the unlawful racial harassment by Nelson, Floyd's failed to take prompt, effective remedial action to end the harassment.

49. Floyd's refused to discipline Nelson, and instead, transferred Woodall without his consent to a less desirable job assignment and work site and reduced his daily remuneration.

50. As a direct and proximate result of Floyd's violation of 42 U.S.C. § 2000e-2(a)(1), Woodall suffered actual damages including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

51. Floyd's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Woodall's federally-protected rights.

## COUNT II

(Title VII – Discharge/Race)

52. Plaintiff repeats, re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

53. Floyd's unlawfully terminated Woodall's employment because of his race in violation of 42 U.S.C. § 2000e-2(a)(1).

54. As a direct and proximate result of Floyd's violation of 42 U.S.C. § 2000e-2(a)(1), Woodall suffered actual damages including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

55. Floyd's unlawful actions were intentional, willful, malicious and/or done with

reckless disregard for Woodall's federally-protected rights.

## COUNT III

(Title VII – Retaliation/Transfer)

56. Plaintiff repeats, re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

57. Woodall engaged in protected activity under 42 U.S.C. § 2000e-3 when he complained to Simandl about Nelson's use of racial slurs and his hostile and intimidating behavior toward Woodall because he complained about his discriminatory treatment.

58. Floyd's transferred Woodall to the Missouri site and less desirable job duties because Woodall engaged in protected activity under Title VII when he complained about Nelson's unlawful race discrimination/harassment.

59. Floyd's transfer of Woodall to the Missouri job site negatively changed his duties from operating a backhoe to performing far more physically strenuous and less desirable work of digging with a shovel, and eliminated Woodall's daily mileage per diem.

60. Woodall's transfer to a less desirable job assignment at the Missouri site and the elimination of his daily mileage per diem were materially adverse actions which would dissuade a reasonable employee from complaining about unlawful harassment.

61. As a direct and proximate result of Floyd's violation of 42 U.S.C. § 2000e-3(a), Woodall suffered actual damages including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

62. Floyd's unlawful retaliatory actions toward Woodall were intentional, willful,

malicious and/or done with reckless disregard for his federally-protected rights.

## COUNT IV

(Title VII – Retaliation/Discharge)

63. Plaintiff repeats, re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

64. Unlike its treatment of Woodall, Floyd's did not terminate Caucasian employees who were tardy or absent from work on fewer than three occasions nor employees who did not oppose unlawful discrimination/harassment.

65. Floyd's did not follow its "three-strike" attendance policy with respect to Woodall and instead terminated his employment because he engaged in legally protected opposition to unlawful race discrimination/harassment in violation of 42 U.S.C. § 2000e-3(a).

66. As a direct and proximate result of Floyd's violation of 42 U.S.C. § 2000e-3(a), Woodall suffered actual damages including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

67. Floyd's unlawful retaliatory actions toward Woodall were intentional, willful, malicious and/or done with reckless disregard for his federally-protected rights.

68. The effect of the practices complained of in Counts I through IV above has been to deprive Woodall of equal employment opportunities and otherwise adversely affect his employment status because of his race and because he opposed unlawful racial harassment.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

  A. Enter declaratory judgment on Counts I-IV finding that Floyd's unlawfully discriminated against and retaliated against Woodall in violation of Title VII, 42 U.S.C. §§ 2000e-(2)(a) and (3)(a);

  B. Issue a permanent injunction enjoining Floyd's, its employees, agents, officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race, including the harassment, transfer and/or discharge of employees because of such individual's race in violation of 42 U.S.C. § 2000e-2(a);

  C. Issue a permanent injunction enjoining Floyd's, its employees, agents, officers, successors, assigns, and all persons in active concert or participation with them, from "discriminat[ing] against any of its employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under [Title VII], in violation of 42 U.S.C. § 2000e-3(a);

  D. Order Floyd's to institute and carry out policies, practices and programs that provide equal employment opportunities for black workers and eradicate the effects of its past and present unlawful practices;

  E. Order Floyd's to make whole Woodall by providing appropriate back pay and benefits with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices, including but not limited to rightful place reinstatement or front pay in lieu of reinstatement;

  F. Order Floyd's to make whole Woodall by providing compensation for past

10

and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described Counts I-IV above, including but not limited to emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, in amounts to be determined at trial;

      G.      Order Floyd's to pay Woodall punitive damages for its malicious conduct or reckless indifference described above, in amounts to be determined at trial;

      H.      Grant such other and further relief as this Court deems necessary and proper in the public interest; and

      I.      Award the Commission its costs in this action.

Respectfully submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN, MO Bar No. 46520
Regional Attorney

C. FELIX MILLER, MO Bar No. 28309
Supervisory Trial Attorney

/s/ Jennifer L. Arendes
JENNIFER L. ARENDES, MO Bar No. 46638
Telephone: (314) 539-7916
Facsimile: (314) 539-7895
jennifer.arendes@eeoc.gov

GRANT R. DOTY, MO Bar No. 60788
Telephone: (314) 539-7918
Facsimile: (314) 539-7895
grant.doty@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
St. Louis District Office
1222 Spruce, Room 8.100
St. Louis, MO  63103